No. 20-7912

# In the United States Court of Appeals for the Fourth Circuit

UNITED STATES,

*Appellee,*

v.

MICHAEL A. MANGARELLA,

*Appellant.*

On Appeal from the United States District Court
for the Western District of North Carolina
(No. 3:06-cr-151-FDW-DCK-3)
The Honorable Frank D. Whitney, District Judge

## CORRECTED REDACTED APPELLANT'S BRIEF

Brian D. Boone
J. Stephen Tagert
Alston & Bird LLP
One South at The Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com
stephen.tagert@alston.com

*Counsel for Michael A. Mangarella*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ............................................... 3

STATEMENT OF THE ISSUES .................................................. 4

STATEMENT OF THE CASE ..................................................... 4

STANDARD OF REVIEW ........................................................... 12

SUMMARY OF ARGUMENT ..................................................... 12

ARGUMENT ............................................................................... 14

I.    THE DISTRICT COURT VIOLATED THE PRINCIPLE OF PARTY PRESENTATION BY FORCING THE GOVERNMENT TO RECONSIDER ITS POSITION ON MR. MANGARELLA'S MOTION FOR COMPASSIONATE RELEASE ........................................................................ 14

II.   THE DISTRICT COURT ERRED BY FAILING TO CONSIDER MR. MANGARELLA'S EVIDENCE OF POST-SENTENCING MITIGATION WHEN ANALYZING THE § 3553(A) FACTORS ................................................... 18

III.  IF THIS COURT DOES NOT GRANT MR. MANGARELLA'S MOTION, IT SHOULD REMAND AND REASSIGN THE CASE TO A NEW DISTRICT JUDGE ........................................ 23

CONCLUSION ............................................................................ 25

REQUEST FOR ORAL ARGUMENT ....................................... 25

CERTIFICATE OF COMPLIANCE ........................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alderman v. United States,*
  394 U.S. 165 (1969)..............................................................................14

*Am. Council of the Blind of Metro. Chi. v. City of Chi.,*
  No. 19 C 6322, 2021 U.S. Dist. LEXIS 223845
  (N.D. Ill. Nov. 19, 2021).....................................................................15

*Ariz. v. Cal.,*
  530 U.S. 392 (2000).............................................................................15

*Greenlaw v. United States,*
  554 U.S. 237 (2008)................................................................. 13, 14, 15

*Penson v. Ohio,*
  488 U.S. 75 (1988) ..............................................................................15

*Porter v. Clarke,*
  923 F.3d 348 (4th Cir. 2019)...............................................................16

*Steves & Sons, Inc. v. Jeld-Wen, Inc.,*
  988 F.3d 690 (4th Cir. 2021)...............................................................15

*Tex. Disposal Sys. v. FCCI Ins. Co.,*
  854 F. App'x 576 (5th Cir. 2021) ................................................... 17, 18

*United States v. Chambers,*
  956 F.3d 667 (4th Cir. 2020)...............................................................17

*United States v. Grant,*
  715 F.3d 552 (4th Cir. 2013)...............................................................12

*United States v. Martin,*
  916 F.3d 389 (4th Cir. 2019)....................................................... *passim*

*United States v. McCall,*
    934 F.3d 380 (4th Cir. 2019)...........................................................23, 24

*United States v. McCoy,*
    981 F.3d 271, 284 (4th Cir. 2020)...................................................18, 19

*United States v. McDonald,*
    986 F.3d 402 (4th Cir. 2021)..............................................20, 21, 22, 23

*United States v. Mitchell,*
    No. 21-6036, 2021 U.S. App. LEXIS 32614 (4th Cir. Nov. 2, 2021) ....22

*United States v. Nicholson,*
    611 F.3d 191 (4th Cir. 2010)...............................................................23

*United States v. Oliver,*
    878 F.3d 120 (4th Cir. 2017)....................................................14, 15, 16

*United States v. Pileggi,*
    361 F. App'x 475 (4th Cir. 2010) .....................................................5, 24

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) ..............................................................*passim*

*United States v. Stuckey,*
    Nos. 20-7740, 21-6212, 2021 U.S. App. LEXIS 29664
    (4th Cir. Oct. 1, 2021) ........................................................................22

*United States v. Whiteside,*
    No. 1:09-cr-00069-MR, 2020 U.S. Dist. LEXIS 142190
    (W.D.N.C. Aug. 10, 2020) .............................................................17, 18

*Wood v. Milyard,*
    566 U.S. 463 (2012)............................................................................17

**Statutes**

18 U.S.C. § 371 ...........................................................................................4

18 U.S.C. § 1343 ...........................................................................4

18 U.S.C. § 3553(a) ................................................................ *passim*

18 U.S.C. § 3582 .................................................................... *passim*

18 U.S.C. § 3742 ...........................................................................4

28 U.S.C. § 1291 ...........................................................................4

**Rules**

Federal Rule of Appellate Procedure 4(c)(1)(A)(ii) ...................................4

**Other Authorities**

Centers for Disease Control & Prevention, *Alzheimer's Disease &
    Healthy Aging: COVID-19 Risks and Vaccine Information for Older
    Adults* (updated Aug. 2, 2021),
    https://www.cdc.gov/aging/covid19/covid19-older-adults.html..............7

Centers for Disease Control & Prevention, COVID-19: *People with
    Certain Medical Conditions* (updated Dec. 14, 2021),
    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
    precautions/people-with-medical-conditions.html................................7

U.S.S.G. § 1B1.13 ...................................................................19

## **INTRODUCTION**

Under the principle of party presentation, courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The principle reflects that in the American judicial system, "courts are essentially passive instruments of government" that "wait for cases to come to [them]." *Id.* (internal quotation marks omitted).

But in the proceedings below, the district court was not a "passive instrument of government." It crossed the line from neutral arbiter to advocate, essentially telling the government what to argue in response to Appellant Michael Mangarella's motion for compassionate release. That tainted the proceedings below.[1]

Mr. Mangarella, convicted of non-violent offenses, has served the equivalent of 212 months of a 360-month sentence. He is 67 years old and ██████████████████████████████ that, given his age, make him susceptible to serious illness from a COVID-19 infection.

Before the pandemic, Mr. Mangarella moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his age and ████████████, but the district court denied the motion. Once the pandemic began, Mr. Mangarella moved for reconsideration twice. The

---

[1] This Court appointed Mr. Mangarella's appellate counsel in accordance with the Criminal Justice Act.

government supported Mr. Mangarella's second motion, agreeing that compassionate release was warranted based on "an individualized evaluation of Mangarella's situation, including his medical conditions, the current impact of the COVID-19 pandemic on the facility where he is serving his sentence, and a weighing of the § 3553(a) factors."

But the district court did not like the government's position. It *sua sponte* ordered the government to defend its position in a hearing the following day. At that hearing, the district court remarked that it was "stunned" and "caught . . . off guard" by the government's position and ordered the government to reconsider its position. The government complied with the district court's order and withdrew its support for Mr. Mangarella's motion. The district court then denied the motion, ignoring Mr. Mangarella's evidence of post-sentencing mitigation relevant to the § 3553(a) factors.

That was error—and of a kind that could undermine public trust in legal proceedings. The district court declined to rule on the issues as the parties presented them and instead took steps to reshape the government's position before denying Mr. Mangarella's motion. That conduct violated the principle of party presentation.

But that was not the district court's only error. It also abused its discretion under § 3582 by failing to consider Mr. Mangarella's significant evidence of post-sentencing mitigation when it considered the § 3553(a) factors. This Court has held that when analyzing a motion

2

under § 3582 and considering the § 3553(a) factors, "a district court [must] consider evidence of post-sentencing mitigation . . . relevant to the § 3553(a) factors." *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019). When a district court has failed to do so, this Court has reversed. *See, e.g.*, *id.* at 398. Here, in assessing the § 3553(a) factors, the district court ignored evidence relating to Mr. Mangarella's ███████ and post-sentencing mitigation efforts—evidence that supported compassionate release. This Court should reverse on that basis alone.

\* \* \*

The district court's efforts to dictate government policy on compassionate-release motions violated the principle of party presentation and raised the appearance of bias and partiality. This Court should reverse the district court's order and, consistent with the government's original position, grant Mr. Mangarella's motion for compassionate release. Alternatively, the Court should remand and reassign the case to a different judge to consider Mr. Mangarella's motion.

## JURISDICTIONAL STATEMENT

On December 7, 2020, the district court denied Mr. Mangarella's motion for reconsideration of the court's order denying his motion for compassionate release. J.A. 331. On December 20, 2020, Mr. Mangarella submitted his notice of appeal to his institution's internal mail system, which ultimately bore a December 21, 2020 postmark. J.A. 332, 334.

Accordingly, his notice of appeal was timely under Federal Rule of Appellate Procedure 4(c)(1)(A)(ii). Mr. Mangarella's notice of appeal was filed with the district court on December 28, 2020. J.A. 332.

The district court had jurisdiction under 18 U.S.C. § 3582(c)(1)(A)(i) to rule on Mr. Mangarella's motion for compassionate release. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1. Whether the district court violated the principle of party presentation by requiring the government to reconsider its decision to support Mr. Mangarella's motion for compassionate release.

2. Whether the district court erred by ignoring Mr. Mangarella's evidence of post-sentencing mitigation when considering the § 3553(a) factors.

3. Whether the district court erred in denying Mr. Mangarella's motion under 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release.

## STATEMENT OF THE CASE

1. Mr. Mangarella was convicted of conspiracy to defraud the United States (18 U.S.C. § 371) and wire fraud (18 U.S.C. § 1343) and is serving a 360-month sentence. He has been in custody since May 16, 2006 (*see* S.J.A. 335), which amounts to 188 months of incarceration. His projected release date is January 3, 2032.

Mr. Mangarella's convictions relate to a sweepstakes fraud that occurred while he was living in Costa Rica. When the government

arrested Mr. Mangarella and his co-defendants, it provided Costa Rican authorities with diplomatic assurances that Mr. Mangarella and his co-defendants would not spend the rest of their lives in prison. *See United States v. Pileggi*, 361 F. App'x 475, 478 (4th Cir. 2010) (describing the United States' negotiations with Costa Rican authorities).[2]

Mr. Mangarella has been an exemplary inmate. His disciplinary record reflects that he "has shown improvement in his behavior and will continue to do so upon his release." J.A. 137. He has participated in many classes and training programs to prepare himself for post-prison life, including classes in drug abuse education, diversity awareness, typing, advanced yoga, and Spanish II, among others. J.A. 136. He has also maintained a job as an orderly, served as an usher in his church, and coached basketball. J.A. 128, 136–37; S.J.A. 933. When he was first incarcerated, Mr. Mangarella completed an intensive rehabilitation program to move to a low-security facility and was told that he is the only inmate in more than 20 years to be moved as a result of completing the program. J.A. 224; S.J.A. 1002. He has maintained constant communication with his wife and two sons, and his family wants to assist him in his transition to post-prison life. J.A. 129, 138.

---

[2] The district court originally sentenced Mr. Mangarella to 600 months—50 years—in prison, but the sentence was reduced to 360 months in light of this Court's decision in *Pileggi*. J.A. 72–73.

Mr. Mangarella is now 67 years old with . He has

S.J.A. 912, 939–40, 946.

S.J.A. 912, 946.[3]

2.    Because of ███████████████████████ and his age, Mr. Mangarella sought compassionate release on October 14, 2019. J.A. 73. The warden denied his request on November 12, 2019. *Id.* On December 17, 2019, Mr. Mangarella filed a *pro se* motion in the district court for compassionate release, arguing that his "circumstances satisfy the 'extraordinary and compelling reasons' standard under § 3582(c)(1)(A)(i) . . . based on his age, health concerns, and the time he already has served." J.A. 56–65. In that motion—filed before the pandemic—Mr. Mangarella did not rely on his susceptibility to COVID-19 but instead on his ███████████████. The district court denied the motion on March 16, 2020—just as society was shutting down because of COVID-19—finding that he "failed to establish that [his medical conditions] [we]re causing 'a serious deterioration in physical or mental health because of the aging process.'" J.A. 75, 325–26.

Soon after the pandemic brought society to a halt, on March 31, Mr. Mangarella moved the district court to reconsider its order based on the COVID-19 pandemic, his age, and his ███████████. J.A. 78–79.[4] Mr. Mangarella expressed concerns that if he remained in prison, he would die from COVID-19. In a text order on April 9, the district court denied the motion for reconsideration "because [Mr. Mangarella] merely cited to generalized information on Covid-19, not any new individualized analysis of whether he has been exposed to or has the coronavirus." J.A. 24.

As the pandemic worsened and COVID-19 cases multiplied in Mr. Mangarella's prison facility, he sought reconsideration again, this time with an attorney's help. Mr. Mangarella argued that his risk from a COVID-19 infection qualified as an "extraordinary and compelling" reason for a sentence reduction under § 3582. J.A. 113–24; S.J.A. 918–

---

[4] *See* Centers for Disease Control & Prevention, COVID-19: *People with Certain Medical Conditions* (updated Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 24, 2022) (explaining that ██████████████████████████ ████████); Centers for Disease Control & Prevention, *Alzheimer's Disease & Healthy Aging: COVID-19 Risks and Vaccine Information for Older Adults* (updated Aug. 2, 2021), https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Jan. 24, 2022) ("Older adults are more likely to get very sick from COVID-19. Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die.").

29. He also pointed to evidence that COVID-19's fatality rate increases exponentially for people 65 and older and that prison facilities are among the worst places for transmission. J.A. 117, 121; S.J.A. 922, 926. Addressing the § 3553(a) factors, Mr. Mangarella acknowledged that his underlying convictions qualified him for the sentence originally imposed but argued that those circumstances do not justify exposing him to a life-threatening illness when supervised release would satisfy the § 3553(a) factors. J.A. 126–28; S.J.A. 931–33.

Given the change in circumstances, the government supported Mr. Mangarella's motion, explaining that Mr. "Mangarella has met his burden of demonstrating 'extraordinary and compelling reasons' warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)." J.A. 177. The government agreed that Mr. Mangarella had established an extraordinary and compelling reason warranting compassionate release because ████████████████████████████████ and "his ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic condition itself." J.A. 180. The government also agreed that Mr. Mangarella's time served was "sufficient with respect to the § 3553(a) factors in the instant pandemic context." J.A. 181.

In explaining its position, the government emphasized that it was "not supporting Mangarella's motion solely because he suffers from one

8

of the CDC-identified risk factors" but instead as a "result of an individualized evaluation of Mangarella's situation, including his medical conditions, the current impact of the COVID-19 pandemic on the facility where he is serving his sentence, and a weighing of the § 3553(a) factors." J.A. 182. The government also explained that Mr. Mangarella's "COVID-19 infection risk is particularly grave and that compassionate release is warranted." *Id.*

3.      Instead of ruling on the issues as the parties presented them, the district court on August 4 issued an order *sua sponte* stating that the government was "tak[ing] a materially inconsistent position on this motion relative to its position on similar motions" and ordering the parties to appear by telephonic hearing the next day. J.A. 187. The court required "the United States Attorney for the Western District of North Carolina, or his specifically-designated Assistant United States Attorney with policymaking authority, to represent the Government's position." *Id.*

During the August 5 hearing, the district court remarked that it was "caught . . . off guard" because the government took a "materially inconsistent position with regard to the Government's position in all other 3582 motions throughout the district." J.A. 189. The district court asked the government to explain its position for "all of these [compassionate release] cases" because each case "create[d] precedent" that "govern[ed] far more than just the case before us." J.A. 190. When

9

the government explained that the Department of Justice issued internal guidance on May 18 (titled "COVID-19 and Compassionate Release") supporting releasing inmates with health conditions presenting "extraordinary and compelling reasons," the district court responded that it was "stunned" that the government supported Mr. Mangarella's motion. J.A. 190–91. The district court described the government's position as "inconsistent" with the 50 other compassionate-release motions that the court had addressed and said that the government was "changing policy" by agreeing to Mr. Mangarella's release. J.A. 192.

The district court also stated, without pointing to evidence, that there was a "0.56 percent mortality rate" for COVID-19 and that Mr. Mangarella was asking for "extraordinary relief for someone where there's a 99 percent chance" that he would recover. J.A. 199–200. The court also asked the government whether it "ha[d] the authority to order the BOP to move him to an isolation cell" until the COVID-19 pandemic ended. J.A. 200. The court questioned why Mr. Mangarella should get a "windfall" reducing his sentence when the COVID-19 pandemic would in the court's view threaten him only "over the next two or three months." J.A. 201–02. The district court directed the government to reconsider its position and to address the government's compassionate-release policy "to consider the issue of why Mr. Mangarella without any explanation is entitled to a reduction of [his] sentence [of] 14 years under [§] 3553(a), not [the] COVID-19 issue, but the [§] 3553(a) issue." J.A. 210.

4.    On August 19, the government complied with the district court's order and announced its new position, withdrawing its support for Mr. Mangarella's motion. S.J.A. 1014–15. The government explained that "extraordinary and compelling" circumstances still existed but backtracked on its earlier position and now argued that that the § 3553(a) factors did not warrant release. S.J.A. 1022–25. The government argued that "fourteen years is a significant sentence for any white-collar offense" but adopted the new position that Mr. Mangarella's continued incarceration prevents him from victimizing others. S.J.A. 1023. In announcing its about-face, the government did not examine any of Mr. Mangarella's post-sentencing conduct.

Several months later, on December 7, the district court denied Mangarella's motion for compassionate release for the reasons set out in the government's amended response. J.A. 328–31. The district court looked only to Mr. Mangarella's criminal history and the underlying offense, denying Mr. Mangarella's motion on the basis of his "violent conduct, his extensive criminal history, his disrespect for the law, and the need to protect the public from him as well as the other 3553(a) factors." J.A. 331. The court did not consider Mr. Mangarella's post-conviction evidence of mitigation.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a § 3582(c) motion for abuse of discretion. *See, e.g.*, *Martin*, 916 F.3d at 396. "A district court

abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Grant*, 715 F.3d 552, 557 (4th Cir. 2013) (citation omitted).

"[W]hether a court ruling on a motion to reduce under § 3582(c)(2) must provide an individualized explanation is considered *de novo* by this Court." *Martin*, 916 F.3d at 395.

When a district court violates the principle of party presentation, the appellate court has authority to remedy the error. *See Sineneng-Smith*, 140 S. Ct. at 1579.

## SUMMARY OF ARGUMENT

1.      The district court violated the principle of party presentation by advocating for the government to change its position instead of serving as a neutral arbiter. In the American judicial system, "courts are essentially passive instruments of government" that "wait for cases to come to [them]." *Sineneng-Smith*, 140 S. Ct. at 1579 (internal quotation marks omitted). We presume in our legal system that "parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). The district court violated that bedrock principle by telling the government what its position should be—categorical

opposition to compassionate-release motions based on COVID-19 concerns—instead of ruling on the arguments presented.

2. The district court also erred by failing to consider Mr. Mangarella's evidence of post-sentencing mitigation. This Court has held that when considering the § 3553(a) factors anew, "a district court [must] consider evidence of post-sentencing mitigation . . . relevant to the § 3553(a) factors." *Martin*, 916 F.3d at 397. The district court failed to consider Mr. Mangarella's evidence of post-sentencing mitigation, so this Court must reverse the district court's order.

3. Ruling on the issues as presented would have led the district court to grant Mr. Mangarella's motion. As the government recognized, Mr. Mangarella's evidence of his deteriorating health and post-sentencing mitigation efforts justify compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

## ARGUMENT

## I. THE DISTRICT COURT VIOLATED THE PRINCIPLE OF PARTY PRESENTATION BY FORCING THE GOVERNMENT TO RECONSIDER ITS POSITION ON MR. MANGARELLA'S MOTION FOR COMPASSIONATE RELEASE.

The district court violated the principle of party presentation by requiring the government to reconsider its position on Mr. Mangarella's motion for compassionate release. By declining to rule on the parties' arguments as presented and instead advocating for a change in the

government's position, the district court took on the role of advocate, which is forbidden in our judicial system. The Court should reverse the district court's decision and grant Mr. Mangarella's motion.

"Adversary proceedings are a major aspect of our system of criminal justice." *Alderman v. United States*, 394 U.S. 165, 183–84 (1969). They "increase public confidence in the justice system" and "implicitly recognize that 'parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.'" *United States v. Oliver*, 878 F.3d 120, 126 (4th Cir. 2017) (quoting *Greenlaw*, 554 U.S. at 244).

"In our adversarial system of adjudication, we follow the principle of party presentation." *Sineneng-Smith*, 140 S. Ct. at 1579; *see Oliver*, 878 F.3d at 126 ("[O]ur adversarial system of justice is premised on 'the well-tested principle' that party presentation is the most effective method for reaching the best outcome in each case." (quoting *Penson v. Ohio*, 488 U.S. 75, 84 (1988))). The principle is "basic to our system of adjudication." *Ariz. v. Cal.*, 530 U.S. 392, 413 (2000).

Under the principle of party presentation, courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Sineneng-Smith*, 140 S. Ct. at 1579 (quoting *Greenlaw*, 554 U.S. at 243); *see also Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 712 (4th Cir. 2021) (courts should "decide only questions presented by the parties" (quoting *Sineneng-*

*Smith*, 140 S. Ct. at 1579)); *Am. Council of the Blind of Metro. Chi. v. City of Chi.*, No. 19 C 6322, 2021 U.S. Dist. LEXIS 223845, at *11 (N.D. Ill. Nov. 19, 2021) ("[I]t is improper for the court to act as counsel for any party." (citing *Sineneng-Smith*, 140 S. Ct. at 1579)). "[C]ourts are essentially passive instruments of government" that "wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." *Sineneng-Smith*, 140 S. Ct. at 1579 (internal quotation marks omitted). The principle applies with particular force when the United States, "the richest, most powerful, and best represented litigant to appear before [federal courts]," takes a position in litigation. *See Greenlaw*, 554 U.S. at 244.

Consistent with the principle of party presentation, courts should not make arguments for the parties, for doing so "disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system." *Oliver*, 878 F.3d at 127; *see also id.* ("When the court raises a forfeited issue sua sponte, it undermines the principle of party presentation and risks becoming a third advocate.").

Here, the district court crossed the line from "neutral arbiter" to advocate. *Sineneng-Smith*, 140 S. Ct. at 1579. When the district court learned that the government supported Mr. Mangarella's motion, it scheduled a hearing on the motion because—in its view—the government was "tak[ing] a materially inconsistent position on this motion relative to its position on similar motions." J.A. 187. The court went a step further,

requiring the U.S. Attorney or an assistant with "policymaking authority" to appear and defend the government's position. *Id.* And at the hearing, the court made clear that it disagreed with the government's position, explaining that it was "caught . . . off guard" and "stunned" by the government's "materially inconsistent position" with other compassionate-release cases. J.A. 189–90.[5]

Those events confirm that the district court violated the principle of party presentation. Instead of taking the issues as the parties presented them and allowing the government to assert its own positions (*Sineneng-Smith*, 140 S. Ct. at 1579), the district court injected itself into the proceeding as if it were representing the government and ordered the government's lawyers to reconsider their position while "[d]isregarding COVID-19." J.A. 207. That was error. *Compare Wood v. Milyard*, 566 U.S. 463, 466 (2012) ("A court is not at liberty . . . to bypass, override, or excuse a State's deliberate waiver of a limitations defense.").

In shaping the proceedings as it did, the district court usurped the government attorneys' role. Instead of trying to dictate government

---

[5] The court also declared that COVID-19 had a "0.56 percent mortality rate" and that Mr. Mangarella was asking for "extraordinary relief for someone where there's a 99 percent chance" that he would recover. J.A. 199–200. The court also suggested that it could order the Bureau of Prisons to move Mr. Mangarella to an isolation cell until the COVID-19 pandemic ends. J.A. 200; *cf. Porter v. Clarke*, 923 F.3d 348, 357 (4th Cir. 2019) (noting that solitary confinement can violate the Eighth Amendment's prohibition against cruel and unusual punishment because it "poses an objective risk of serious psychological and emotional harm").

policy, the district court should have done what the court did in *United States v. Whiteside*, No. 1:09-cr-00069-MR, 2020 U.S. Dist. LEXIS 142190 (W.D.N.C. Aug. 10, 2020). There, after this Court's decision in *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), the defendant argued that the district court should retroactively apply a nine-year-old Fourth Circuit decision to his eleven-year-old conviction. *Whiteside*, 2020 U.S. Dist. LEXIS 142190, at *6. The government chose not to respond to the defendant's request except to say that it "agree[d] that this Court should exercise its discretion to reduce [the Defendant's] sentence to time served." *Id.* (second alteration in original) (internal quotation marks omitted). The court expressed doubt that the government's view was correct, but it cited *Sineneng-Smith* and held that the Court's nine-year-old decision would apply retroactively because of the government's concession. *See id.* at *6–7; *see also Tex. Disposal Sys. v. FCCI Ins. Co.*, 854 F. App'x 576, 579 n.6 (5th Cir. 2021) (even though it viewed a party's position as "completely untenable," the court "remain[ed] within the confines of the issue as the parties [] presented it" because the opposing party did not raise the issue).

The *Whiteside* court served as a neutral arbiter; the district court below did not. This Court should reverse the decision below and grant Mr. Mangarella's motion for compassionate release. Alternatively, the Court should remand for a different judge to rule on Mr. Mangarella's motion.

## II. THE DISTRICT COURT ERRED BY FAILING TO CONSIDER MR. MANGARELLA'S EVIDENCE OF POST-SENTENCING MITIGATION WHEN ANALYZING THE § 3553(A) FACTORS.

The district court also erred by failing to consider Mr. Mangarella's significant evidence of post-sentencing mitigation when assessing the § 3553(a) factors.

Under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may move for a reduction in his sentence if he has exhausted all administrative rights to appeal or if the warden for the defendant's facility fails to rule on a sentence-reduction request for more than 30 days. *See id.* Upon receiving the motion, the court must first determine whether "extraordinary and compelling reasons warrant such a reduction." *Id.* The court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis added). If "extraordinary and compelling reasons exist," the district court must then (1) "consider[] the factors set forth in section 3553(a) to the extent that they are applicable," and (2) determine "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also McCoy*, 981 F.3d at 288.[6]

---

[6] This Court has said that U.S. Sentencing Guideline § 1B1.13 is "helpful guidance even when motions are filed by defendants." *See McCoy*, 981 F.3d at 282 n.7. The application notes to U.S. Sentencing Guideline § 1B1.13 provide examples of extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. 1(A)–(C). They include, for instance, an inmate's

In ruling on a motion for compassionate release, "a district court [must] consider evidence of post-sentencing mitigation . . . relevant to the § 3553(a) factors." *Martin*, 916 F.3d at 396–97. Reciting the defendant's original criminal behavior without more does not suffice. *Martin*, 916 F.3d at 397; *see also id.* ("The district court was content to memorialize [the defendant's] past transgressions without giving any weight to the multitude of redemptive measures that [the defendant] has taken since she was initially sentenced to life in prison."). Instead, the district court must supply a "robust and detailed explanation" for denying the motion. *See Martin*, 916 F.3d at 396.

When a defendant presents "mitigating evidence that was not available at [the defendant's] initial sentencing hearing," a district court must consider that evidence. *United States v. McDonald*, 986 F.3d 402, 411 (4th Cir. 2021); *see Martin*, 916 F.3d at 398 ("The district court must provide [the defendant] an individualized explanation as to why his lengthy sentence for a nonviolent [] offense must remain only partially reduced given the significant amount of mitigation evidence that [the defendant] has proffered post sentencing."). Evidence of post-sentencing mitigation can include completing educational coursework, participating

---

serious medical condition. *Cf.* U.S.S.G. § 1B1.13 cmt. 1(A). They also separately include the circumstance when the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. 1(B).

in prison programming (including substance abuse programs, parenting courses, and health and wellness initiatives), experiencing deteriorating health as a result of age, obtaining sentence-reduction credits for good behavior, and earning less-restrictive security clearance. *See McDonald*, 986 F.3d at 411; *Martin*, 916 F.3d at 396.

This Court has repeatedly held that a district court must consider evidence of good behavior and rehabilitation. In *Martin*, for instance, a defendant convicted of various drug offenses presented evidence that she had secured her place in a low security facility, earned her GED, and served as a tutor to other inmates. 916 F.3d at 392–93. Another defendant convicted of a drug offense presented evidence of extensive medical issues and a lack of disciplinary infractions. *Id.* at 393–94. In ruling on the defendants' motions for compassionate release, the district court did not indicate that it considered either defendant's evidence of post-sentencing mitigation and instead denied the defendants' motions based on the reasons given by the government. *See id.* at 393, 395. This Court reversed, holding that "[t]he district court must provide an individualized explanation for why [the first defendant's] steps toward rehabilitation [we]re meaningless" (*id.* at 397), and that "[t]he evidence of [the second defendant's] exemplary conduct must properly be factored into the decision regarding his liberty interests." *Id.*; *see also id.* at 398 ("[T]he district court must provide a rationale as to why two individuals who have placed themselves on a positive life trajectory, despite the

challenges of a lengthy period of incarceration, should receive no relief for their rehabilitation.").

Likewise, in *McDonald*, the defendants presented evidence of rehabilitation, such as obtaining or progressing toward their GED, completing drug treatment practices, holding steady jobs, and having exemplary disciplinary records. *See McDonald*, 986 F.3d at 404–08. The government argued that the defendants' post-sentencing conduct was "unexceptional," but this Court disagreed, holding that each defendant "spent nearly two decades in prison where, despite lengthy prison terms, they utilized the resources and programming they could access in prison to work toward rehabilitation." *Id.* at 412. The Court concluded that "[u]nder *Martin*, that kind of post-sentencing mitigating evidence is enough to require a district court to provide an explanation on the record of its reasons for deciding a sentencing reduction motion." *Id.* (citing *Martin*, 916 F.3d at 397).

Those decisions are not outliers. Since the pandemic began, this Court has vacated orders denying § 3582(c)(1)(A)(i) motions when the district court ignored evidence regarding the defendant's health conditions and instead focused solely on the underlying offense. Take this Court's decision in *Stuckey*. There, the Court reversed an order denying a compassionate-release motion because the district court focused only on the underlying offense and did not indicate in its order that it considered the defendant's evidence that he was particularly susceptible

to COVID-19 and had amassed mitigating evidence while in prison. *United States v. Stuckey*, Nos. 20-7740, 21-6212, 2021 U.S. App. LEXIS 29664, at *2 (4th Cir. Oct. 1, 2021) (citation omitted). Similarly, in *United States v. Mitchell*, No. 21-6036, 2021 U.S. App. LEXIS 32614 (4th Cir. Nov. 2, 2021), this Court held that a district court abused its discretion when it used a form order mechanically reciting that it had considered the defendant's medical condition and the serious nature of his offense in the face of new mitigating evidence, including reclassification to a low-security facility, an extensive history of program participation, and a work history in positions of trust. *Id.* at *1, *3–4.

Here, the district court ignored "a mountain of new mitigating evidence" about Mr. Mangarella's post-sentencing improvement and good behavior and ███████████████. *Martin*, 916 F.3d at 396. Like the defendants in *Martin* and *McDonald*, Mr. Mangarella has spent the better part of "two decades in prison where, despite [a] lengthy prison term, [he] utilized the resources and programming [he] could access in prison to work toward rehabilitation." *See McDonald*, 986 F.3d at 412. And he now suffers from ████████████████████████ that make him more susceptible to serious impairment from COVID-19. S.J.A. 912, 940–41, 947.

That "mountain of new mitigating evidence" should have led the district court to grant Mr. Mangarella's motion. At a minimum, the

district court was required to consider it. *See Martin*, 916 F.3d at 397. By failing to do so, the district court abused its discretion.

## III.  IF THIS COURT DOES NOT GRANT MR. MANGARELLA'S MOTION, IT SHOULD REMAND AND REASSIGN THE CASE TO A NEW DISTRICT JUDGE.

This Court should grant Mr. Mangarella's motion for compassionate release because the government agreed that compassionate release was warranted. J.A. 177, 182. But if the Court concludes that remand is appropriate, it should reassign the case to a different district judge.

The Court can reassign a case when there is "concern[] about the public's perception of bias" (*United States v. McCall*, 934 F.3d 380, 384 (4th Cir. 2019)) or when there is "even a suspicion of partiality." *See United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010). When considering reassignment, the Court weighs three factors: "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *McCall*, 934 F.3d at 384 (quoting *Nicholson*, 611 F.3d at 217) (internal quotation marks omitted).

Those factors weigh in favor of reassigning the case to a different judge. By pressing the government to change its position (and reinterpret, if not revise, its compassionate-release policy), the district court raised the appearance of bias or partiality. It is unlikely that the district court could put its previous actions and sentiments to the side in ruling on remand.

Even if the district court could do so, the appearance of bias would remain, so reassignment is warranted to "preserve the appearance of justice." *McCall*, 934 F.3d at 384 (quoting *Nicholson*, 611 F.3d at 217). The district court took steps to make the government change its stance on Mr. Mangarella's motion; those actions, coupled with the court's statements about the risk from COVID-19 and the possibility of ordering isolation until the pandemic ends, cast doubt on the fairness of the proceedings below. For similar reasons, the Court reassigned the case of one of Mr. Mangarella's co-defendants. *See Pileggi*, 361 F. App'x at 479 ("[W]e vacate Pileggi's 600-month sentence and remand with instructions that the case be reassigned for resentencing.").

Mr. Mangarella's motion is also straightforward, so there would be no waste of resources in reassigning the case to a different judge.

## <u>CONCLUSION</u>

This Court should reverse the district court and grant Mr. Mangarella's motion for compassionate release. Alternatively, the Court

should remand for the district court to reconsider Mr. Mangarella's motion and reassign the case to a different district judge.

Respectfully submitted February 22, 2022.

/s/ *J. Stephen Tagert*

Brian D. Boone
J. Stephen Tagert
Alston & Bird LLP
One South at The Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com
stephen.tagert@alston.com

*Counsel for Michael A. Mangarella*

## REQUEST FOR ORAL ARGUMENT

Mr. Mangarella requests oral argument.

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 6,076 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This corrected brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14 point.

February 22, 2022.

By: /s/ *J. Stephen Tagert*